UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KORENDI L. BARKER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 1:02cr5 |
| ) | (1:05cv156) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

OPINION AND ORDER

This matter is before the court on a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody", filed by the petitioner, Korendi L. Barker ("Barker"), on May 9, 2005. The government responded to the motion on November 9, 2005, to which Barker has not replied. As an "addendum" to her Section 2255 motion (and filed the same day), Barker filed a motion for appointment of counsel.

On December 12, 2005, this court entered an order taking Barker's motion for appointment of counsel under advisement, and granting Barker 60 days to file her reply to the government's response to her Section 2255 motion. In the December 12, 2005 order, this court noted that the grounds asserted in Barker's petition were of a factual nature, and that Barker (who has an Associate's Degree) should be able to respond to the government's brief without needing counsel's assistance. Barker has again failed to file a reply.

For the following reasons, Barker's Section 2255 petition will be denied, and her request for appointment of counsel will also be denied.

Discussion

On January 23, 2002, a three count Indictment against Barker for violations of 18 U.S.C.

§922(a)(6), was returned; alleging that she made false and fictitious written statements to a federally licensed firearms dealer which statement was likely to deceive the dealer of the lawfulness of the sale as to a fact material to the acquisition of the firearms, that being she was the actual purchaser of the firearms when in truth and fact she was not because she was making the purchase for someone else. (R. 1) Barker was arrested, had her initial appearance, was released on terms and conditions and was appointed counsel. (R. 9-13). Barker entered a plea of not guilty to the charges. (R. 14). Appointed counsel withdrew and new counsel, Michelle F. Kraus, was appointed to represent Barker. (R. 17-19).

On May 2, 2002, a Plea Agreement was filed of record. (R. 22). In accordance with the terms of the plea, Barker agreed to plead guilty to Count 1 and to cooperate with the government.[1] (R. 22). The written Plea Agreement contained a waiver provision which stated the following:

> Defendant is aware that her sentence will be determined in accordance with the United States Sentencing Guidelines and any applicable statutorily required sentencing provisions. Defendant is also aware that a sentence imposed under the Guidelines does not provide for parole. Defendant agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for her offense as set forth above in

---

[1] Under paragraph 12(d) the Plea Agreement stated: "[t]he defendant agrees to testify truthfully at any trial, grand jury proceeding or hearing at which she is called as a witness by the United States. The defendant further agrees to cooperate with the United States by providing information, being interviewed by government agents and providing records prior to and in preparation for any trial, grand jury proceeding or hearing which in the estimation of the government the defendant may have pertinent knowledge whether directly or circumstantially relevant. The defendant understands that a failure to testify truthfully or provide complete and truthful information at any trial, grand jury proceeding, interview or hearing would constitute a material breach of this Plea Agreement and the government would then be able to proceed against defendant as if no Plea Agreement had existed."

> paragraph 7 of this Plea Agreement. With that understanding, defendant expressly waives her right to appeal her sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742. Defendant also agrees not to contest her sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255.

(Plea Agreement paragraph 12(c)).

At the plea hearing held May 2, 2002, Barker pled guilty to Count 1. (R. 25 and Plea Hearing Transcript). During the plea hearing, the Magistrate Judge conducted an inquiry of Barker, which included the following:

> THE COURT: You also understand under some circumstances you or the government may have the right to appeal any sentence that the Court imposes?
> THE DEFENDANT: Yes.
> THE COURT: However, that right may be waived as part of a plea agreement. You understand that under the terms of your plea agreement in this case, you have expressly waived any right to appeal any sentenced imposed, and you've also agreed not to contest any sentence imposed, or the manner in which it was determined in any post-conviction proceeding?

(Plea Hearing Transcript p. 11).

Barker advised the Magistrate Judge[2] that she wished to change her plea of not guilty to guilty to Count 1. (Plea Hearing Tr. p. 2). Following an inquiry, the Magistrate Judge determined that Barker, 31, who had an Associates Degree, was competent to plead. (Plea Hearing Tr. p. 3). Barker indicated she was satisfied with her attorney's representation (Plea Hearing Tr. p. 4); understood her rights to a trial (Plea Hearing Tr. p. 5-7); still wished to plead guilty (Plea Hearing Tr. p. 7); discussed with her attorney the charge in the Indictment to which she intended to plead guilty, and understood that charge (Plea Hearing Tr. p. 7-8); understood the maximum

---

[2] Barker, her counsel and counsel for the government consented to the Magistrate Judge conducting the plea hearing. (Plea Hearing Tr. p. 5)

3

penalty she faced (Plea Hearing Tr. p. 9-10); had spoken to her attorney about how the Sentencing Commission Guidelines might apply to her case (Plea Hearing Tr. p. 10-11); had a right to appeal her sentence, but that she had expressly waived her right to do so (Plea Hearing Tr. p. 11); had not been threatened or forced in any way to plead guilty (Plea Hearing Tr. p. 11); recited the substance of the Plea Agreement (Plea Hearing Tr. p. 12-13); had not been made any promise other than the Plea Agreement to plead guilty (Plea Hearing Tr. p. 13); had not been made any promise by her lawyer or anyone as to the sentence she would receive (Plea Hearing Tr. p. 13); what she was giving up if her plea was accepted (Plea Hearing Tr. p. 13-14); did do as was charged in Count 1 (Plea Hearing Tr. p. 15); in her own words what she did in connection with the offense (Plea Hearing Tr. p. 15-16); agreed with the government's recitation of the government's evidence of what she did (Plea Hearing Tr. p. 16-18); plead guilty to Count 1 (Plea Hearing Tr. p. 18).

The Magistrate Judge issued a Report and Recommendation that Barker's plea of guilty be accepted by the District Court. (R. 25, 26). When no objections were filed to the Magistrate's Report and Recommendation, the undersigned adopted the Report and Recommendation and accepted Barker's plea of guilty on May 17, 2002. (R. 28). The parties stipulated that Barker remain out on bond on the terms and conditions previously imposed. (R. 27, 29). Barker's sentence was continued on several occasions to allow her to complete her agreed upon cooperation and receive the benefit of such cooperation by the time of her sentencing. (R. 30-51). Based on the Presentence Investigation Report (PSR), Barker was looking at a potential range of imprisonment of 8 to 14 months (Zone C) as a result of her offense level of 11 (base offense of 12, plus 1 for the number of guns, minus 2 for acceptance of responsibility) and

Criminal History Category of I. (PSR) The Plea Agreement called for a low end recommendation. (R.22, paragraph 12(a)).

On August 25, 2004, Barker and the government signed and filed into the record an "Agreement as to Sentencing Issues." (R. 52). The sentencing agreement specifically stated:

> 5. Ms. Barker was served with a subpoena through her counsel to testify at the upcoming trial of her brother, Riakos Barker.
>
> 6. However, Ms. Barker did not appear or testify at the trial of Riakos Barker, which took place on May 24-25, 2004. Instead, defense counsel for Riakos Barker presented the government with the attached affidavit of Ms. Barker recanting any incriminating statements she had made against her brother, Riakos Barker.
>
> 7. As a result of the recanting affidavit, the government had to move to dismiss those counts which related to Ms. Barker's anticipated testimony - testimony consistent with what she had told to Special Agent Sean Skender of the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF) and consistent with testimony given under oath before the Grand Jury on a previous date. A Motion in Limine was also filed in the trial of Riakos Barker, both motions were granted by the District Court. Riakos Barker then proceeded to trial on the remaining counts of the Indictment.
>
> 8. In an effort to resolve this case and for Ms. Barker to be sentenced, the government agrees not to seek a determination of the breach of the Plea Agreement to recharge Ms. Barker with the original charges, and additionally to charge her with a violation of either 18 U.S.C. §§ 1001 (materially false statement to a federal agent), 1621 (perjury), or 1623 (false declaration before a grand jury or court); Ms. Barker agrees that she has breached the terms of her Plea Agreement insofar as it relieves the government of its obligation to recommend the low-end of the guideline range, and agrees that since she gave conflicting statements about the person for whom she bought the guns, and has signed an affidavit which could result in additional charges,
> she is not entitled to receive a reduction for acceptance of responsibility and agrees that she should receive a two (2) level enhancement for obstruction of justice under § 3C1.1. As a result of this agreement, Ms. Barker faces an offense level of 15, criminal history category I, with a sentencing guideline range of 18 to 24 months imprisonment.

At the sentencing hearing on September 14, 2004, the Court again reminded Barker that while she had a statutory right to appeal her sentence under certain conditions, she may have

5

waived that right and noted that in this case Barker had entered into a Plea Agreement where she waived some or all of her rights to appeal her sentence and that such waivers are generally enforceable, but if she believed it was unenforceable, she could present that theory to the Appellate Court. (Sentencing Tr. p. 11). Barker was then sentenced to 21 months imprisonment on her plea. (R. 56,57). No appeal was taken from the sentence or conviction.

In her Section 2255 motion, Barker alleges that her conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily or with an understanding of the nature of the charge or consequence of the plea, that her conviction was obtained by use of a coerced confession, that her conviction was obtained by an illegal search and seizure, that she cooperated with the government but did not receive credit for doing so and that her counsel was ineffective, and that she was denied her right to appeal.

To obtain relief under section 2255, a petitioner must show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995). Yet a section 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996)(citing *Daniel v. United States*, 26 F.3d 706, 711 (7th Cir. 1994)); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Accordingly, there are three (3) types of issues which cannot be raised by way of a section 2255 motion:

> (1) issues that were raised on direct appeal, absent a showing of changed circumstances;
>
> (2) non-constitutional issues that could have been but were not raised on direct appeal; and

> (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford,* 975 F.2d at 313 (footnotes and citations omitted)(overruled on other grounds, *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). Failure of a petitioner to establish either cause or prejudice relating to the third type of issue requires dismissal of the habeas petition. *Salberg v. United States*, 969 F.2d 379, 381 (7th Cir. 1992); *See generally United States v. Barger*, 178 F.3d 844, 848 (7th Cir. 1999).

To the extent Barker is complaining about her sentence, or her attorney's failure to appeal, she fails to recognize that by virtue of the terms of her Plea Agreement, she specifically waived the right to *appeal her sentence or to contest her sentence* in any post conviction proceeding under 28 U.S.C. § 2255 (emphasis added). At her plea hearing, Barker was specifically asked if she understood that under the terms of her Plea Agreement she was waiving her right to appeal and she acknowledged she was waiving this right. Further, at her sentencing hearing, the undersigned again reminded her that she had waived this right, and if she thought her waiver was unenforceable, she should present that theory to the Appellate Court. Contrary to her assertions, the record supports that she made a knowing and voluntary waiver of her right to appeal or challenge her sentence. Barker's statements made in response to the Court's inquiry are presumed truthful. *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998); See also *United States v. Loutos*, 383 F.3d 615, 618-19 (7th Cir. 2004). Such waivers contained in plea agreements are enforceable. *Bridgeman v. United States*, 229 F.3d 589, 591-2 (7th Cir. 2000)[3];

---

[3] The waiver can be unenforceable if it was involuntary or counsel was ineffective in negotiating the agreement. *Bridgeman*, 589 F.3d at 591; See also *United States v. Sines,* 303 F.3d 793, 798 (7th Cir. 2002). However, Barker has not made these assertions and cannot show

7

*Mason v. United States,* 211 F.3d 1065, 1068-69 (7th Cir. 2000); *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999).

Therefore, this court agrees with the government that any challenge to her sentence on appeal or in the present post conviction proceeding would be barred. The remainder of Barker's contentions will be addressed below.

As to the first ground stated in her petition, Barker contends that her plea of guilty was unlawfully induced and not made voluntarily or with an understanding of the nature of the charge or consequence of the plea. The government asserts that this conclusory self supporting statement is not borne out in the record of the plea hearing in this case. The Magistrate Judge took great time to go over all of Barker's rights and what she was giving up by pleading, the terms of the Plea Agreement, and the charge to which she proposed to plead guilty, the penalties, as well as to make sure she was competent, and had not been forced or threatened in any way in making her plea. Again, statements Barker made in response to the Court's inquiry are presumed to be truthful. The record does not support her contention that her plea was not made knowingly and voluntarily. Rather, the record shows that Barker was informed several times of the exact

---

that the waiver was involuntary, or that counsel was ineffective in negotiating the waiver. The plea hearing record demonstrates that Barker voluntarily entered into the agreement and to cooperate to receive the benefit of a lighter sentence, and that she was pleased with her attorney's performance, and no one threatened her or forced her in any way to plead guilty. Barker was advised of the waiver provision being part of the terms of her Plea Agreement. While the waiver was part of the plea terms, so were other terms that Barker accepted in return, the recommendation for acceptance reduction, the dismissal of other counts, and a low end recommendation. See Plea Agreement and see also *United States v. Hare*, 269 F.3d 859, 861-3 (7th Cir. 2001). Barker's only contention as to her attorney's alleged ineffective assistance of counsel is that the attorney kept insisting if she did not plead guilty she would receive more charges and more time, but at the same time she acknowledged that she had actually purchased the weapons for her brother.

8

consequences of her plea, and that she voluntarily chose to plead guilty. Accordingly the court holds that this ground has no merit.

Further, the record does not support her contention alleged in her fifth ground (which is related to the first ground alleged) that she was not told she was allowed to appeal or collaterally attack. The Court advised Barker of her this right at the plea and sentencing hearings. The waiver was part of her written Plea Agreement. Barker's self serving statements, without more are not sufficient to enable her to any relief for these contentions.

As to her second ground, Barker believed her conviction was obtained by the use of a coerced confession. However, as the government points out, there was no motion to suppress filed in this case. Barker chose to plead guilty after being advised of the rights she would be forfeiting. The evidence the government had against her was evidence to which she had admitted, that being the transcript of her testimony under oath in front of the grand jury when after being advised of her constitutional rights, she admitted she had presented her gun permit and state ID and filled out and signed the ATF Form 4473 on the date in question, and question 9(a) was answered "yes" she was the actual purchaser, when she admitted she was buying the gun for someone else, someone who told her which gun to purchase, provided the cash for the gun, and received the gun from her following the purchase. Barker indicated she had been paid to make the purchase and did not have the weapons. (Plea Hearing Tr. p. 16-18). Barker had agreed with the government's summary of what she did. (Plea Hearing Tr. p. 18).

Had Barker gone to trial and been convicted, in light of the government's evidence, she would not have gotten a low end recommendation, the chance for a reduction based on her cooperation, nor any reduction for acceptance of responsibility. The Plea Agreement terms gave

9

her a chance to receive less incarceration time. Unfortunately for her, Barker balked at cooperating, and signed an affidavit recanting her prior testimony under oath, which statement she made unbeknownst to her attorney. (Sentencing Hearing Tr. p. 5-6). Clearly, ground two is also meritless.

The government next asserts that ground three is really a non issue, as Barker contends her conviction was obtained by an illegal search and seizure of her home without a warrant, but points to no evidence that was used against her as a result of this alleged search. The government is not aware of any such search nor evidence relied upon to support the basis for her conviction resulting from any alleged search. Regardless of her contentions in grounds two and three, a valid plea waives the right to challenge alleged violation of constitutional rights that are unrelated to the Plea Agreement. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991); *United States v. Brown*, 870 F.2d 1354, 1360 (7th Cir. 1989). If Barker wished to challenge her statement or even the evidence of her crime, she would have had to have made the challenge, and then could have gone to trial to preserve the issues or entered into a conditional plea to preserve the issue for appellate review. Barker did none of these things. By pleading guilty, Barker lost the right to make these claims. Further, failure to bring these claims on appeal bars her from bringing this claim in the 2255 without a showing of cause and prejudice, neither of which she can show.[4]

As to her fourth ground, Barker contends that her conviction was obtained by "the

---

[4]Even if Barker tried to argue her counsel was ineffective in failing to raise them, she would fair no better, as there was no coerced confession nor any search of her home - and she cannot show that but for her counsel's alleged failures, she would have not plead guilty.

10

unconstitutional failure of the prosecution to disclose evidence favorable to the defendant" but goes on to argue that she "cooperated fully with the government but did not receive credit from the prosecution for doing so . . [and] did not notify the court as to her cooperation." (Petition at p. 6) Clearly, the government is correct in its assertion that this is a groundless claim, without any basis in fact or the record.

Barker's sentencing had been delayed several times to allow her to complete contemplated cooperation and give her the benefit of the same at the sentencing. However, when Barker's brother's case went to trial, she failed to attend any pre trial with the government and despite being served with a subpoena to testify, did not show nor testify. Not only did Barker not fulfill her promised cooperation, but she signed an affidavit recanting her previous testimony under oath which resulted in the government's case being weakened without her testimony, and the dismissal of the charges against her brother which had been based on her contemplated testimony. In lieu of facing more charges for her conduct, the parties entered into an agreement for her sentencing that took away her acceptance, relieved the government of the low end recommendation, apprized the Court of her non-cooperation and assessed her points for obstruction. Barker signed off on this agreement. At the sentencing hearing she told the Court she was under a lot of pressure from her family and didn't know which way to go, so she just "messed up" she guessed. (Sentencing Hearing Tr. p. 4-7,8).

It has been recognized that a "defendant has no constitutionally protected right to a downward departure based on alleged substantial assistance provided to the government." *United*

*States v. Kelly*, 14 F.3d 1169, 1177 (7th Cir. 1994).[5] As the Court in *Kelly* recognized, such a claim is waived if not raised before the sentencing court, and no such claim was made by Barker or her attorney.  It is clear that Barker did not cooperate, and based on her conduct, she cannot claim to have done so.

Finally, as to her claimed "ineffective assistance of counsel," the government is again correct this claim too has no merit. In order to prevail on this claim, Barker must demonstrate that her counsel's conduct of which she complains was deficient and that this deficiency prejudiced the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001). A challenge made to an attorney's performance must "direct the court to the specific acts or omission which form the basis of [her] claim." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). In assessing the first component, the proper standard is that of "reasonably effective assistance," which means Barker must show that her counsel's representation fell below an objective standard of "reasonableness." *Strickland*, 466 U.S. at 698. "[A] Court must indulge the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *United States v.*

---

[5] The decision to request a substantial assistance departure rests with the prosecution and cannot be reviewed unless the refusal is based on an unconstitutional motive. *Kelly*, 14 F.3d at 1177. Since Barker cannot even show she completed her cooperation, and since the charges against her brother based on her previous testimony had to be dismissed based on her recanting affidavit, no "cooperation" resulted in any "substantial assistance." As the Court recognized about Kelly's conduct, Barker's conduct is also the "sort of assistance the government can live without." 14 F.3d at 1178.

*Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991); *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990). To establish prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been *different.* *Strickland*, 466 U.S. at 689; *United States v. Starnes,* 14 F.3d 1207, 1209-10 (7th Cir. 1994). Barker's claims must fail if she cannot show both deficient performance and prejudice. *Salberg*, 969 F.2d at 381.

In her petition, Barker contends that her counsel was "unwilling to listen and/or report to the prosecution that the defendant was actually purchasing the weapons for her brother." Counsel just kept insisting (correctly) that if she did not plead guilty, she would receive more charges and more time. This falls way short of any alleged deficient performance or prejudice.[6] By her own statement, Barker admits she was buying the guns for someone else, her brother, a convicted felon, and as such, she was not the actual purchaser of the weapons. Barker advised the Court she wished to plead guilty, made a factual basis, agreed with the government's factual basis and when asked how she pled, she said "guilty." The record does not support Barker's contentions, because at the plea hearing Barker herself told the Court that no one had threatened or forced her to plead guilty. Barker has no support for her contention, other than her own self serving statement. Whatever her counsel may have told her, one thing was clear, that is to be eligible for any reduction for acceptance, and to get the benefit of any cooperation, Barker would have to plead guilty.  Barker had already testified under oath in front of the grand jury after waiving her

---

[6]Barker would have a hard time meeting her burden of establishing that counsel's performance was objectively unreasonable and that but for counsel's erroneous advice, she would not have pleaded guilty. *Bridgeman*, 229 F.3d at 592.

13

rights and said that she had been paid to make the gun purchase, she had used someone else's money, was told which gun to buy, went to the store, used her ID and filled out the form falsely stating that she was the actual purchaser when she was not. Barker's statements were supported by the paper trail and the fact she did not have the guns[7]. It would not be ineffective for her counsel to point out the benefits of the plea and what it could mean to her if she plead under the circumstances.

Barker contends that she was told by her counsel that "with all the new laws coming out", she would be getting her sentence reduced, but then says she was not told the sentence she would get, and that she only saw her attorney four times in three years. Barker then concludes that her attorney's lack of attention to her case prejudiced her and the sentence she ultimately received.. However, as the government points out, Barker fails to realize that there was nothing her counsel could do after her plea since the case had been set over for sentencing to give her the chance to cooperate and receive a break. It wasn't counsel's conduct which prejudiced her, but rather Barker's own conduct which resulted in her receiving what should have been no jail time, and perhaps straight probation, to the final sentence of 21 months. Barker's counsel did what any good, able and competent counsel would do under the circumstances of Barker's post plea actions, and that is to cut her losses and work out an agreement that would net her client the least amount of jail time. That is just what counsel did, and Barker signed off on this agreement as well.  A review of the record clearly reveals there was no ineffective assistance of counsel in this case.  Accordingly, Barker's Section 2255 petition will be denied.

---

[7] Barker agreed she had purchased from 3-7 guns - (PSR) and some of those guns have been recovered from crimes in Detroit, Michigan.

With respect to Barker's request for appointment of counsel, this court again finds that due to the factual nature of the issues raised, Barker's demonstrated ability in obtaining an Associates Degree, and the lack of evidence supporting any of her claims, the appointment of counsel is not necessary in this case. Accordingly, Barker's request for counsel will also be denied.

## Conclusion

For all of the foregoing reasons, Barker's Section 2255 petition is hereby DENIED. Further, Barker' request for appointment of counsel is also hereby DENIED.

Entered: February 24, 2006.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court